KEMNITZER, BARRON & KRIEG, LLP
KRISTIN KEMNITZER      Bar No. 278946
ADAM J. MCNEILE        Bar No. 280296
MALACHI J. HASWELL     Bar No. 307729
1120 Mar West St., Ste C2
Tiburon, CA 94920
Telephone: (415) 632-1900
Facsimile: (415) 632-1901
kristin@kbklegal.com
adam@kbklegal.com
kai@kbklegal.com

Attorneys for Plaintiff ROSS HIGHTOWER

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSS HIGHTOWER, | Case No. |
| Plaintiff, | **COMPLAINT FOR:** |
| vs. | **I.**   **FRAUDULENT CONCEALMENT;** |
| | **II.**  **NEGLIGENCE;** |
| SOLAR MOSAIC LLC, | **III.** **VIOLATIONS OF THE FAIR CREDIT REPORTING ACT (15 U.S.C. §1681, *ET SEQ.*);** |
| Defendant. | **IV.**  **VIOLATIONS OF THE CONSUMERS LEGAL REMEDIES ACT (CIVIL CODE §1750, *ET SEQ.*);** |
| | **V.**   **VIOLATIONS OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT (CIVIL CODE §1788, *ET SEQ.*);** |
| | **VI.**  **VIOLATIONS OF THE HOME SOLICITATION SALES ACT (CIVIL CODE §1689.5, *ET SEQ.*);** |
| | **VII.** **VIOLATIONS OF BUSINESS AND PROFESSIONS CODE §7150, *ET SEQ.*; AND** |
| | **VIII.** **VIOLATIONS OF THE UNFAIR COMPETITION LAW (BUSINESS & PROFESSIONS CODE §17200, *ET SEQ.*)** |
| _____/ | **JURY TRIAL DEMANDED** |

Complaint

## INTRODUCTION

1.      This case involves a scheme in which Defendant SOLAR MOSAIC LLC ("Mosaic") partners with unscrupulous door-to-door salesmen and contractors to target vulnerable consumers for the fraudulent sale and onerous "financing" of solar panels. Plaintiff ROSS HIGHTOWER ("Plaintiff"), a 65-year-old man working toward retirement, fell victim to Mosaic and its agents' and representatives' scheme. Upon information and belief, Plaintiff alleges as follows.

2.      Plaintiff is a security technician. He has been working hard to retire within the next few years. He is very conscious of how he spends his money. While Plaintiff has an email address that his son set up for him, he generally does not use email, and he does not know how to access his email without assistance. He does not know how to affix his electronic signature to documents using electronic platforms such as DocuSign.

3.      Mosaic's authorized door-to-door salesperson exploited Plaintiff's vulnerabilities. He requested Plaintiff's Personal Identifiable Information ("PII"), including his Social Security number, purportedly to provide a quote to Plaintiff for the installation of solar panels and other home improvements Plaintiff wanted done on his house.

4.      Plaintiff decided that the price quoted was not in his budget and declined to move forward with any home improvements, including solar panels.

5.      Without Plaintiff's knowledge or consent, Mosaic's salesperson used Plaintiff's personal information to create an email address to which Plaintiff had no access, forged his electronic signature on a loan agreement with Mosaic (the "Loan Agreement"), and obligated him on a 25-year loan totaling $48,009.40 (the "Loan") for the installation of solar panels and related equipment such as inverters and racking systems (the "Solar Panel System").

6.      No Solar Panel System was ever installed on Plaintiff's house, nor did Plaintiff ever agree to such an installation. However, Mosaic began sending invoices to Plaintiff demanding payment on a Loan that he did not agree to and for which he did not receive any benefit at all—he did not receive any portion of the Loan amount personally, and he did not receive any product or services related to the Loan. A debt collection servicing company operating on behalf of

1  Mosaic also made repeated debt collection calls and posted debt collection letters on Plaintiff's
2  door.

3  7.      Plaintiff lodged three separate complaints with Mosaic. Mosaic never performed any
4  adequate investigation into Plaintiff's complaints that he did not agree to any Loan with Mosaic.
5  Mosaic never responded substantively to any of Plaintiff's complaints. Despite notifying Mosaic
6  that the Loan was fraudulent, Plaintiff continues to receive notices from Mosaic and its agents
7  that his account is past due.

8  8.      Plaintiff brings this action for fraudulent concealment, negligence, and violation of the
9  Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq.* (the "FCRA"); the Consumer Legal
10 Remedies Act, Civ. Code §1750, *et seq.* (the "CLRA"); the Rosenthal Fair Debt Collection
11 Practices Act (the "Rosenthal Act"), Civ. Code §1788, *et seq.*; the Home Solicitation Sales Act
12 ("HSSA"), Civ. Code §1689.5, *et seq.*; Bus & Prof. Code §7150, *et seq.*; and the Unfair
13 Competition Law ("UCL"), Bus & Prof. Code §17200, *et seq.* Plaintiff seeks actual, statutory,
14 civil, and punitive damages for the harm that he has suffered. Plaintiff also seeks a public
15 injunction against Mosaic to enjoin its unlawful, unfair, and fraudulent conduct.

16                                      **PARTIES**

17 9.      Plaintiff Ross Hightower is an individual over the age of 18 years. At all relevant times,
18 Plaintiff was, and currently is, a resident of the State of California, County of Sacramento.

19 10.     Mosaic is, and at all relevant times was, a Delaware Limited Liability Company, with its
20 principal place of business in Oakland, CA, that at all relevant times relevant was licensed to do
21 business and was conducting business in the County of Alameda.

22                             **JURISDICTION AND VENUE**

23 11.     The Court has federal question jurisdiction over Plaintiff's claim under the FCRA, 15
24 U.S.C. §1681, *et seq.* 28 U.S.C. §1331. The Court has supplemental jurisdiction over Plaintiff's
25 California state law claims because those claims are so related to the federal claim that they form
26 part of the same case or controversy under Art. III of the U.S. Constitution. 28 U.S.C. §1367.

27 12.     The Court has general personal jurisdiction over Mosaic, whose principal place of
28 business is in this state. Mosaic is qualified to do business in California and regularly conducts

1   business in California. Furthermore, the acts and omissions complained of occurred at locations

2   in California.

3   13.     Venue is proper in the Northern District because Mosaic resides in this judicial district

4   and Mosaic's principal place of business is situated in this district. 28 U.S.C. §1391(b)(1).

5                                   **THE HOLDER RULE**

6   14.     All claims and defenses that Plaintiff has against any seller arising out of the instant

7   fraudulent transaction are also valid against Mosaic because Mosaic is the holder of any alleged

8   consumer credit contract. Given the violations of law alleged below, and the Federal Trade

9   Commission Holder in Due Course rule, 16 C.F.R. §433, *et seq*., which subjects the holder of a

10  consumer credit contract to all claims and defenses of the consumer against the seller, Mosaic is

11  subject to all claims and defenses Plaintiff may have against any seller.

12  15.     Specifically, Mosaic's contract contains the following language:

13          ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO
            ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT
14          AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT
            HERETO OR WITH THE PROCEEDS THEREOF. RECOVERY HEREUNDER
15          BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE
            DEBTOR HEREUNDER.
16

17  16 C.F.R. §433.2(a).

18  16.      Accordingly, Mosaic is subject to all claims and defenses Plaintiff could assert against

19  any seller. Numerous of Mosaic's violations of the laws alleged herein are for its own conduct

20  and not derivative of any conduct by any seller, however. The FTC Holder Rule's cap on

21  damages does not apply to Mosaic's own violations of the law.

22                                       **AGENCY**

23  17.     Plaintiff is informed, believes, and thereon alleges that at all times mentioned herein,

24  each Defendant, whether actually or fictitiously named, was the principal, agent (actual or

25  ostensible), or employee of each other Defendant. In acting as such principal or within the course

26  and scope of such employment or agency, each Defendant took some part in the acts and

27  omissions hereinafter set forth, by reason of which each Defendant is liable to Plaintiff for the

28  relief prayed for herein.

18.     Furthermore, Plaintiff is informed, believes, and thereon alleges that at all times mentioned herein, the employees and/or representatives of Freedom Forever LLC ("Freedom Forever"), the purported "seller" in the instant fraudulent transaction, act as agents and at the direction of Mosaic as part of the Mosaic Program described below. Mosaic retained the right to control the conduct of Freedom Forever, including by (1) requiring Freedom Forever sales agents to use specific software, applications, and technology when engaging in transactions with consumers on Mosaic's behalf; (2) controlling the Mosaic products Freedom Forever sales agents could offer, the terms and conditions of the products offered, the method of presentation of the products offered, and the contractual documents that could be utilized; (3) controlling the marketing and sales tactics of Freedom Forever and its sales agents; (4) demanding the types of information, including PII, that Freedom Forever sales agents must obtain from consumers to submit to Mosaic; (5) retaining the right to discipline Freedom Forever and sales agents for violations of policies and procedures set by Mosaic; and (6) retaining the right to terminate Freedom Forever and/or Freedom Forever sales agents from the Mosaic Program. At all times, Mosaic has ratified the conduct of Freedom Forever and its sales agents, including in the instant case.

19.     Further, Plaintiff is informed, believes, and thereon alleges that at all times mentioned herein, the employees and/or representatives of Concord Servicing Corporation ("Concord"), a debt collector that began contacting Plaintiff on behalf of Mosaic after the fraudulent execution of the Loan Agreement, act as agents of Mosaic and at the direction of Mosaic. Mosaic vested Concord with the authority to collect debts on behalf of Mosaic and Concord consented to and did so act on behalf of Mosaic, including by (1) calling Plaintiff at a number Mosaic provided to Concord about a Loan held by Mosaic; (2) sending mail relating to the alleged Mosaic Loan to Plaintiff at an address Mosaic provided to Concord; and (3) posting dunning letters on Plaintiff's door instructing Plaintiff to contact Concord regarding the alleged Mosaic Loan. Mosaic retained the right to control the actions of Concord, including by instructing Concord on when and how to contact Plaintiff, directing Concord on the substance of the communications to Plaintiff, and retaining the right to terminate Concord's authority to collect debts on Mosaic's behalf.

1  Additionally, or in the alternative, Mosaic ratified Concord's conduct by knowingly accepting
2  the benefits of Concord's actions and/or by failing to enforce reasonable policies or procedures
3  regarding Concord's activities despite having knowledge of Concord's practices that would have
4  led a reasonable person to investigate further.

5                              **FACTUAL ALLEGATIONS**

6                          **The Consumer Solar Panel Industry**

7  20.      The solar industry is one of the fastest-growing global industries, with a global valuation
8  of $154.47 billion in 2020, and estimated to balloon to over $1 trillion by 2028.[1] Though green
9  energy is a noble goal, the exponential growth in the industry has led to an exponential growth of
10  fraud, with little to no oversight.

11  21.      Mosaic oversees and then ratifies the fraud perpetrated by its agents such as Freedom
12  Forever and Freedom Forever's salespeople. As Mosaic is aware, the solar sales and financing
13  business is heavily populated with deceptive and dishonest contractors (with which it partners
14  and whose conduct it oversees and ratifies) targeting, preying upon, and ripping off vulnerable
15  consumers.[2] Numerous state and federal authorities have taken action to forestall some of the
16  egregious tactics employed by solar panel contractors and lenders, including through lawsuits
17  brought by state Attorney General offices, the Federal Trade Commission, and the federal
18  Consumer Financial Protection Bureau.[3] Government actors have also issued advisories, initiated

---

[1] *See Solar Photovoltaic Market Size [2021-2028] USD 1,00.92 Billion* (Apr. 25, 2022), https://finance.yahoo.com/news/solar-photovoltaic-market-size-2021-120400068.html.

[2] *See, e.g.*, Alana Samuels, *The Rooftop Solar Industry Could Be on the Verge of Collapse*, TIME (Jan. 25, 2024), https://time.com/6565415/rooftop-solar-industry-collapse/ ("Solar customers across the country say that salespeople obscure the specific terms of the financial agreements and cloud the value of the products they peddle."); Alana Samuels, *Rooftop Solar Power Has a Dark Side*, TIME (Sept. 26, 2023), https://time.com/6317339/rooftop-solar-power-failure/ (reporting that the number of consumer complaints relating to solar panels has risen 746% since 2018); David Lazarus, *Column: This Solar Company Wouldn't Let a Dead Woman out of Her Contract*, LA TIMES (June 1, 2021), https://www.latimes.com/business/story/2021-06-01/column-solar-power-dead-customer (reporting that a solar panel lender signed up a 91-year-old woman for solar panels weeks before her death and then steadfastly refused the family's pleas to cancel the contract after her death).

[3] Lauren Trager, Press Release, Office of the Attorney General of Connecticut, *Attorney General Tong Sues Vision Solar Over Unfair and Deceptive Sales, Violations of Home Improvement Act* (Mar. 16, 2023), https://portal.ct.gov/AG/Press-Releases/2023-Press-Releases/Attorney-General-Tong-Sues-Vision-Solar-Over-Unfair-and-Deceptive-Sales (the Attorney General of Connecticut sued Vision Solar for preying on low-income, elderly, and disabled homeowners, pressuring them into unaffordable loans for solar panels that in some cases were never activated); *Fed. Trade Comm'n et al. v. Ygrene Energy Fund Inc.*, Case No. 2:22-CV-07864 (C.D. Cal.) (filed Oct. 28, 2022) (lawsuit by FTC and the State of California against lender for unfair practices relating to solar panel financing); *Missouri Attorney General Sues Solar Panel Company After Customer Complaints, News 4*
(footnote continued)

investigations, started victim restoration funds, and taken other measures to curb unfair and
unlawful practices in the solar panel industry.[4] Private lawsuits challenging abuses in the
industry have been necessary to fill the large gaps in regulatory enforcement.[5] Despite these
unmistakable indications of rampant abuses against consumers, large solar panel financing
companies like Mosaic continue to disclaim any liability even while orchestrating their networks

---

*Investigation*, KMOV (Sept. 30, 2022) https://www.kmov.com/2022/10/01/missouri-attorney-general-sues-solar-power-company-after-customer-complaints-news-4-investigation/ (reporting that former Missouri Attorney General and now U.S. Senator Eric Schmitt sued Pink Energy for making false promises and misrepresentations to consumers, deception, and concealing material facts); *State of Minnesota v. Brio Energy LLC et al.*, County of Hennepin, Minnesota Fourth Judicial District, Case No. 27-CV-22-6187 (filed Apr. 25, 2022) (lawsuit by Minnesota Attorney General against four Utah-based solar panel companies alleging they lied about their relationship with Minnesota utilities, misrepresented financial benefits of purchasing solar panels, and tricked consumers into signing binding sales contracts and loan agreements); *U.S. v. Vivint Smart Home, Inc.*, Case No. 2:21-cv-00267-TS (D. Utah Apr. 29, 2021) [Dkt. 3-1] (stipulated order for permanent injunction and civil penalty judgment for Vivint Smart Home, Inc.'s violation of the FTC's "Red Flags Rule" involving identity theft); Eli Wolfe, *A Major Player in Solar Energy Leaves Some Customers Seething*, SALON (May 9, 2020), https://www.salon.com/2020/05/09/a-major-player-in-solar-energy-leaves-some-customers-seething_partner/SALON (detailing actions filed by New York, New Jersey, and New Mexico against Vivint Solar); Jeff Goldman, *Vivint Solar Agrees to Pay $122k Fine Over Charges of Deceptive Door-to-Door Sales Practices*, NJ.COM (Oct. 24, 2019), https://www.nj.com/news/2019/10/vivint-solar-agrees-to-pay-122k-fine-over-charges-of-deceptive-door-to-door-sales-practices.html (lawsuit by New Jersey's Division of Consumer Affairs resulted in $122k fine against Vivint Solar); *New Mexico v. Vivint Solar Developer, LLC et al.*, County of Bernalillo, New Mexico Second Judicial District, Case No. D-202-CV-201801936 (filed Mar. 8, 2018) (lawsuit by New Mexico Attorney General alleging solar panel installation contractor engaged in unfair and deceptive practices including fraudulently inducing consumers to enter into twenty-year power purchase agreements which would purportedly save them significant amounts of money); *Vivint, Inc. to pay $375,000 to Resolve Allegations of Deceptive Advertising and Sales Practices*, Georgia Office of the Attorney General, Consumer Prot. Div. (Feb. 12, 2015) https://consumer.georgia.gov/press-releases/2015-02-12/vivint-inc-pay-375000-resolve-allegations-deceptive-advertising-and-sales.

[4] Press Release, Office of the Attorney General of the State of Kentucky, *Attorney General Cameron Leads Nine States in Urging Five Solar Lender Companies to Suspend Financial Obligations For Pink Energy Consumers* (Nov. 22, 2022), https://www.kentucky.gov/Pages/Activity-stream.aspx?n=AttorneyGeneral&prId=1287; Kurtis Ming, *California Establishes Fund for Victims of Solar Fraud*, CBS Sacramento (July 25, 2022), https://www.cbsnews.com/sacramento/news/california-establishes-fund-for-victims-of-solar-fraud/; Press Release, Office of the Attorney General State of Idaho, *Attorney General Issues Tips for Homeowners on Solar Installations* (Feb. 21, 2022) https://www.ag.idaho.gov/newsroom/attorney-general-issues-tips-for-homeowners-on-solar-installations/ (reporting the Idaho AG issued a consumer alert regarding solar companies' use of misleading sales tactics through door-to-door sales and social media advertisements); *CFPB Takes Action Against Fintech Company GreenSky for Enabling Merchants to Secure Loans For Consumers Without Their Authorization*, Consumer Fin. Prot. Bureau (July 12, 2021), https://www.consumerfinance.gov/about-us/newsroom/cfpb-takes-action-against-fintech-company-greensky-for-enabling-merchants-to-secure-loans-for-consumers-without-their-authorization/;

[5] Bailey Schulz, *New Jersey Solar Company Allegedly Pressured Vulnerable Populations Into Contracts for a 'Shoddy Product'*, USA TODAY (Apr. 12, 2023), https://www.usatoday.com/story/money/2023/04/10/vision-solar-panel-lawsuit/11600307002/ (detailing class action suit filed in New Jersey on behalf of plaintiffs from five States alleging that solar panel leasing company Vision Solar salespeople used high-pressure sales tactics to convince homeowners—including low-income, disabled and elderly individuals—to purchase or lease solar panel systems); *Vivint Solar Buyers Ink Deal in Predatory Sales Suit*, LAW360 (Sept. 12, 2022), https://www.law360.com/articles/1529150/vivint-solar-buyers-ink-deal-in-predatory-sales-suit; *Vivint Accused of Tricking ADT Customers Into Switching*, LAW360 (Aug. 17, 2020), https://www.law360.com/articles/1301565/vivint-accused-of-tricking-adt-customers-into-switching; *Vivint Solar Investors Sue Brass Over Predatory Sales Worries*, LAW360 (Mar. 10, 2020), https://www.law360.com/articles/1252108/vivint-solar-investors-sue-brass-over-predatory-sales-worries.

1  of contractors through a web of perverse incentives that prioritizes maximizing the procurement

2  of solar contracts over providing even minimal protections to consumers like Plaintiff.

3  **Mosaic's Financing Scheme**

4  22.    The deceptive sales tactics of solar panel installation contractors are enabled, facilitated,

5  and ratified by large financing companies like Mosaic that fund the projects and orchestrate and

6  oversee the entire process, from door-to-door sale to installation. As described above, the

7  industry is rife with scams due to sale and financing companies like Mosaic deputizing door-to-

8  door salespersons with broad authority to use Mosaic's forms and sales tools to sign up

9  vulnerable consumers for tremendously expensive, multi-decade contracts and loans. *See supra*,

10  fns. 2-5.

11  23.    Mosaic is one of largest lenders and/or loan brokers in this segment of the consumer

12  marketplace. As of October 2023, Mosaic claimed that it has funded $14 billion in residential

13  home improvement loans.[6]

14  24.    Mosaic defines its business model as follows:

15  Mosaic makes financing solar, solar plus energy storage systems, and other
16  sustainable home improvements accessible and affordable for homeowners by
   providing a fast and easy way to apply for financing options. Customers learn
17  about Mosaic through approved solar installers and home improvement
   contractors, as well as other ecosystem partners, and can get a credit decision in
18  minutes for no money down loans with fixed interest rates and multiple term
   options. Financing applied for and processed through the Mosaic platform is
19  originated by Solar Mosaic LLC or one of its lending/financing partners. For our
   network of thousands of solar installers and home improvement contractors,
20  Mosaic provides a streamlined financing platform to drive sales growth. Since
   2012, Mosaic has helped more than 300,000 households switch to sustainable
21  home improvements with its financing products.[7]

22  25.    Mosaic administers a paperless lending platform that allows near-instant approval of

23  multi-decade loans of tens of thousands of dollars. The focus of Mosaic's business is arranging

24  loans to finance the purchase and installation of solar panels on the homes of individual

25  consumers.

26  ───────────────

27  [6] *Mosaic Solar Loans First in the Asset Class to Hold 'AAA' Rating*, Mosaic (Oct. 19, 2023),
   https://joinmosaic.com/2023/10/19/mosaic-solar-loans-first-in-the-asset-class-to-hold-aaa-rating/.

28  [7] *Mosaic Surpasses $10 Billion in Loans Funded for Residential Solar and Sustainable Home Improvements*, Mosaic
   (Nov. 8, 2022), https://joinmosaic.com/2022/11/08/mosaic-surpasses-10-billion-in-loans-funded-for-residential-
   solar-and-sustainable-home-improvements/.

26.     To expand its business, Mosaic designed, implemented, and oversees a network of partnerships with solar installation contractors (referred to here as the "Mosaic Program"). Mosaic invites solar installation contractors to join the Mosaic Program with the promise that by doing so they will be able to increase sales. Mosaic's website touts "[w]hether your goal is increasing sales, simplifying operations or getting paid fast, Mosaic is redefining the financing experience, helping customers quickly finance their home improvement projects."[8]

27.     The Mosaic Program lists "benefits" to the contractor as:

     a)      Near-instant pre-approval decisions with soft credit checks;

     b)      Interactive payment estimator;

     c)      Next-day funding and staged funding;

     d)      Easy project tracking and scope changes.

28.     The Mosaic Program lists the customer "benefits" as:

     a)      Financing between $1,500 and $55,000;

     b)      A range of competitive APRs and low monthly payments;

     c)      No prepayment penalties;

     d)      No hidden costs, no swipe fees.[9]

29.     Under the Mosaic Program, contractors such as Freedom Forever become Mosaic's "Partners." The door-to-door sales agents of those Partners are deputized to simultaneously sell customers home improvements and solar panels and arrange financing for the purchases through Mosaic loans. The availability of financing allows the Partner contractors to "close" more transactions more quickly.

30.     Mosaic vests the sales agents of its Partners with the authority to obtain nonpublic PII from consumers, to obtain consumers' credit reports, and to submit loan applications to Mosaic on the customers' behalf. In fact, Mosaic requires that its Partners' salespersons obtain this information on behalf of Mosaic and to submit this information to Mosaic. The Partners and their sales agents are Mosaic's agents in originating Mosaic loans.

31.     Mosaic offers its Partners immediate, on-the-spot approval of the loan applications that

---

[8] *See* https://joinmosaic.com/contractors/home-improvement-financing/ (last visited on Jan. 10, 2024).
[9] *Id.*

the Partners submit on behalf of consumers to Mosaic through an electronic, paperless process.

32.     Mosaic retains a portion of every loan generated by the sales agents of its Partners to cover its fees and charges, as well as to build a significant profit into every transaction. Thus, both Mosaic and the Partner contractors financially benefit from every loan generated by Mosaic and its Partners' sales agents in the Mosaic Program. Mosaic is incentivized to keep Partners happy, as they are Mosaic's agents and joint venturers in the Mosaic Program and the source of Mosaic's fees and loan originations. Mosaic's entire business model is contingent on salespersons facilitating loans on Mosaic's behalf.

33.     The Mosaic Program enables and facilitates the exploitation of vulnerable consumers by unscrupulous solar installation and home improvement contractors with whom it Partners in the Mosaic Program. While Mosaic created and manages the Mosaic Program, and Mosaic controls all aspects of the Mosaic Program as set forth herein, Mosaic has purposefully enacted little to no effective safeguards in the Mosaic Program to protect consumers. As a result, Mosaic's Partners, who Mosaic vests with the broad authority to do so, place consumers into loans that they did not authorize, whose terms they had no opportunity to review, and that they do not understand. Mosaic ratifies the entire process from application to funding, including by failing to investigate consumers' reports of fraud and continuing to hold consumers liable on contracts they never saw or signed.

34.     Mosaic's business model allows its Partners to get paid by Mosaic in return for saddling consumers with tens of thousands of dollars in debt, incentivizing entering unwitting consumers into the loans by any means necessary. The Mosaic Program's paperless system, focus on speed, and financial incentives allow Partners such as Freedom Forever to close sales transactions, lock customers into financing, and receive immediate payment through the Mosaic Program, even if the work allegedly contracted for is never completed and regardless of whether the alleged contracts are forged.

35.     Upon information and belief, Plaintiff alleges that Mosaic deputizes the salespersons of its Partners with broad authority to initiate loan applications and finalize loans using Mosaic forms on Mosaic's online, paperless system, and on behalf of Mosaic. Mosaic retains the right to

1   control its partners' conduct by, among other things, (1) requiring Freedom Forever sales agents

2   to use specific software, applications, and technology when engaging in transactions with

3   consumers on Mosaic's behalf; (2) controlling the Mosaic products Freedom Forever sales

4   agents can offer, the terms and conditions of the products offered, the method of presentation of

5   the products offered, and the contractual documents that could be utilized; (3) controlling the

6   marketing and sales tactics of Freedom Forever and its sales agents; (4) demanding the types of

7   information, including PII, that Freedom Forever sales agents must obtain from consumers to

8   submit to Mosaic; (5) retaining the right to discipline Freedom Forever and sales agents for

9   violations of policies and procedures set by Mosaic; and (6) retaining the right to terminate

10  Freedom Forever and/or Freedom Forever sales agents from the Mosaic Program.

11  36.      Mosaic also ratifies its Partners' conduct by holding consumers such as Plaintiff liable on

12  loans that they never saw or signed and by refusing to investigate reports of forgery, fraud, and

13  identity theft. Instead of assuring that loan agreements generated in Mosaic's name are valid,

14  Mosaic simply pockets a portion of every loan generated by its Partners and sweeps customer

15  complaints under the rug.

16  37.      Freedom Forever participates in the Mosaic Program and is one of Mosaic's partners.

17  Mosaic utilizes a fraudulent scheme to saddle consumers with solar panel installation contracts

18  and loans to finance the purchase of the solar panels that the consumer never entered into.

19  **Mosaic Violates Federal Law Prohibiting Unfair, Deceptive, and Abusive Practices**

20  38.      Lenders such as Mosaic have statutory duties not to engage in unfair acts and practices

21  regarding loans to customers who did not authorize them under 12 U.S.C. §§5531(a) and

22  5536(a)(1)(B). A lender, such as Mosaic, also has a statutory duty under these same provisions

23  not to engage in unfair acts and practices by structuring its loan origination and servicing

24  activities in a manner that enables unauthorized loans. In designing, implementing, and

25  overseeing the Mosaic Program to allow unauthorized loans, Mosaic has violated its statutory

26  duties.

27  39.      Mosaic's violation of these provisions may serve as a predicate violation for Plaintiff's

28  UCL cause of action.

## **Mosaic and its Salespeople Entrapped Plaintiff in Fraudulent Contracts**

40.     Plaintiff is 65 years old and owns his home in Sacramento, California, where he lives with his wife.

41.     Around August 2022, Plaintiff contacted several contractors to come to his house to provide quotes for the installation of solar panels, repairs to his windows and doors, and the installation of a water filtration system. Plaintiff scheduled appointments with four separate contractors, who each sent a salesperson to Plaintiff's house on the same day. Each salesperson prepared a quote for the solar panels, repairs, and improvements Plaintiff was interested in.

42.     The prices the sales representatives quoted were out of Plaintiff's budget, so he declined to move forward with any contractor. He did not sign any contract with any contractor. He never received a copy of any contract. No solar panels were ever installed on Plaintiff's house, and he did not receive any other repairs or home improvements. He gave his Social Security number to one of the contractors; however, he did not sign any loan agreement or other contract. Nor did he authorize the use of his PII to obtain financing.

43.     Sometime later in 2022, Mosaic began mailing Plaintiff monthly billing statements. Plaintiff was confused what the statements were for because he had never heard of that company. Plaintiff called Mosaic and discovered that a loan account had been opened in his name. Plaintiff told the Mosaic representative that he had never opened an account with Mosaic. The Mosaic representative said the loan was for Plaintiff's solar panels, but Plaintiff told Mosaic that he never signed up for solar panels and that he had rejected the bids from each solar contractor that came to his house. At that time, Plaintiff did not even know which solar panel contractor had allegedly submitted a loan application with his name on it to Mosaic. Plaintiff also told Mosaic that he never received any solar panels. The Mosaic representative said that Mosaic would "take care of it." Based on that representation, Plaintiff believed that the issue had been resolved.

44.     After Plaintiff's first call with Mosaic, Mosaic kept sending Plaintiff monthly billing statements in the mail. Plaintiff called Mosaic again and spoke with Mosaic representatives several more times over the course of a year. On the second or third call with Mosaic, around early 2023, the Mosaic representative said that Mosaic would open a complaint for Plaintiff.

1   Plaintiff assumed that Mosaic was investigating his complaint and that the billing statements

2   would stop once Mosaic discovered that Plaintiff did not open a loan account with that company.

3   45.     However, even after Plaintiff opened a complaint with Mosaic, Mosaic continued sending

4   him monthly billing statements. Plaintiff called Mosaic again around mid-2023. Plaintiff

5   repeated that he had never opened a loan account with Mosaic and that Mosaic was sending him

6   billing statements for a loan that he did not sign up for. The representative Plaintiff spoke with

7   again said that they would open a complaint for Plaintiff. Once again, Plaintiff believed that the

8   issue was resolved.

9   46.     Despite Plaintiff's multiple calls with Mosaic, and despite Mosaic telling Plaintiff that

10  they had opened two complaints for Plaintiff, Mosaic kept mailing Plaintiff monthly billing

11  statements. Mosaic also began a concerted collection campaign, sending him repeated letters and

12  text messages. Mosaic eventually employed Concord, a debt collector, that repeatedly called

13  Plaintiff on Mosaic's behalf regarding the Loan that Plaintiff had never agreed to.

14  47.     In late October 2023, Mosaic sent Plaintiff another letter informing Plaintiff that his

15  payment for October was past due. In early November 2023, on behalf of Mosaic, Concord sent

16  Plaintiff a letter telling Plaintiff that his "loan through Mosaic is seriously past due." In mid-

17  November 2023, Mosaic sent Plaintiff another letter demanding payment from Plaintiff. Mosaic

18  also sent Plaintiff several text messages requesting payment. On November 24, 2023, Concord

19  trespassed onto Plaintiff's property and affixed a collection letter to Plaintiff's front door

20  demanding that he contact them regarding the fraudulent Mosaic Loan. Concord's dunning letter

21  stated that "Our client, Solar Mosaic LLC, has asked [Concord] to deliver this letter to you."

22  48.     In late November 2023, Plaintiff's adult son Randy discovered the letters from Mosaic

23  and Concord. Plaintiff told his son that Plaintiff did not know about any Loan and that Plaintiff

24  had already tried to resolve the issue with Mosaic. Around that same time, a representative from

25  Concord called Plaintiff. Plaintiff and his son told Concord the same thing Plaintiff had told

26  Mosaic—that Plaintiff had never signed a loan agreement with Mosaic. The representative from

27  Concord said that Plaintiff would have to speak to Mosaic about the issue.

28  49.     Plaintiff and his son called Mosaic again on December 1, 2023. During that call, the

Mosaic representative said that the loan related to an agreement that Plaintiff signed with Freedom Forever, a solar panel contractor. Plaintiff remembered that Freedom Forever was one of the contractors that visited his house in mid-2022 but Plaintiff never signed any agreement with that contractor or any other contractors who came to his house. Plaintiff also never signed a loan agreement with Mosaic. Plaintiff never agreed to proceed with any project. No solar panels were ever installed on Plaintiff's house, by Freedom Forever or anyone else.

50.     On the December 1, 2023 call, Mosaic told Plaintiff that the alleged Loan Agreement was signed using the email address "rosshightower1958@yahoo.com." Plaintiff had never heard of that email address. Plaintiff did not set up that email address and has never accessed it. In fact, Plaintiff generally does not use email at all. Some time ago, Plaintiff's son helped Plaintiff open an email address through Gmail, but Plaintiff never uses it. Plaintiff has never opened any email account through Yahoo, much less the account that Mosaic said was on his file as having signed the Loan Agreement Mosaic was attempting to enforce. Plaintiff and his son told Mosaic that the only email address Plaintiff has ever created is a Gmail account. Plaintiff provided Mosaic with the Gmail address.

51.     When Plaintiff asked the Mosaic representative about the two complaints Mosaic opened for Plaintiff in the past, the Mosaic representative told Plaintiff that those complaints were closed because Plaintiff did not respond to Mosaic's emails about the complaints. But Mosaic said it had sent those emails to the Yahoo email address that does not belong to Plaintiff, so Plaintiff never received any emails from Mosaic about his complaints. Plaintiff also never received any calls relating to those complaints. Plaintiff asked to be transferred to Mosaic's fraud department, but Mosaic informed Plaintiff that it does not have a fraud department.

52.     Mosaic said that it would open a third complaint for Plaintiff. Plaintiff gave Mosaic his Gmail address so that it could contact Plaintiff about resolving his complaint. The Mosaic representative said that Mosaic would reach out to Plaintiff within 10 days about his complaint. The representative also said that the complaint number would "auto-generate" and that Mosaic would email the complaint number to Plaintiff.

53.     While Plaintiff received emails from Mosaic to his Gmail account on December 2, 19,

20, and 21, 2023, all these emails requested payment for the fraudulent Mosaic Loan. Plaintiff never heard back from Mosaic regarding his complaint. Plaintiff never received a complaint number from Mosaic.

54.     During Plaintiff's multiple calls with Mosaic, he repeatedly asked Mosaic to mail him a copy of the agreement it claims that Plaintiff signed. Mosaic did not mail Plaintiff any documents in response to Plaintiff's requests.

55.     On December 18, 2023, Plaintiff was horrified to find that Concord had again trespassed onto his property on behalf of Mosaic and affixed a dunning letter to his front door attempting to collect on the fraudulent Loan. The December 18, 2023, dunning letter was identical to the letter Concord affixed on Plaintiff's door in November 2023.

56.     On December 27, 2023, Plaintiff contacted Mosaic and finally obtained a copy of the Loan Agreement Mosaic says that Plaintiff signed. Plaintiff had never seen this document before, and he did not sign it. The loan agreement lists Plaintiff's email address as rosshightower1958@yahoo.com, the email address Plaintiff told Mosaic does not belong to him.

57.     Mosaic continues to send Plaintiff demands for payment on the Loan Agreement that Plaintiff did not sign or agree to in any way. Mosaic has never contacted Plaintiff about any of the complaints he made.

58.     Mosaic has reported Plaintiff's alleged debt as delinquent to Transunion and Experian, resulting in a negative report on Plaintiff's credit.

59.     Plaintiff is confused and frustrated about the repeated communications from Mosaic and its loan servicer. Plaintiff already told Mosaic that he never took out a loan from that company and he does not understand why Mosaic has not investigated the issue. Plaintiff is trying to retire within the next few years and he is anxious and afraid of losing any of his savings. Plaintiff is afraid that Mosaic's actions will endanger his financial and housing security.

**FIRST CLAIM FOR RELIEF**
**(Fraudulent Concealment)**

60.     Plaintiff realleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

61.     In addition to its own violations of law, Mosaic is subject to all claims and defenses that Plaintiff has against Freedom Forever because Mosaic is the holder of the consumer credit contract on which Plaintiff is alleged to be obligated.

62.     Mosaic and Freedom Forever concealed facts in making representations to Plaintiff, including but not limited to:

    a)  The fact that Mosaic and its agents were selling a solar installation contract and loan agreement;

    b)  The fact that Mosaic and its agents used Plaintiff's PII to complete a solar installation contract and loan application in Plaintiff's name; and

    c)  The fact that Mosaic and its agents were placing Plaintiff in a solar installation contract with a 25-year loan.

63.     Mosaic and its agents concealed material information from Plaintiff. As a result of that concealment, Plaintiff has been harmed. Mosaic and its agents also made partial statements and half-truths in a situation that required them to make complete and full disclosure of all material facts known to them.

64.     Mosaic and its agents failed to disclose to Plaintiff complete and accurate information about the matters alleged herein. Mosaic and its agents did so despite owing a duty to disclose complete and accurate information to Plaintiff. Mosaic and its agents' actions in failing to disclose this information were intentional.

65.     Plaintiff was unaware of the true facts that were concealed from him.

66.     While Plaintiff never entered into any transaction with Mosaic, if Plaintiff had been given full and accurate information, he would have refused to engage in any discussion with Mosaic.

67.     Plaintiff was harmed by Mosaic's concealment, including by suffering emotional distress and anxiety based on Mosaic's attempts for over a year to collect on a debt Plaintiff does not owe and never agreed to. Plaintiff has further been harmed by Mosaic reporting his account as delinquent to Transunion and Experian.

68.     For Mosaic's fraudulent concealment, Plaintiff is entitled to actual damages, including compensatory damages for all the detriment proximately caused by Mosaic's conduct. Civ. Code

§3333.

69.     Further, Mosaic's actions in concealing material facts from Plaintiff were committed with malice, oppression, and fraud. Mosaic's conduct was intended to cause harm to Plaintiff or was carried out with a willful and conscious disregard of Plaintiff's rights. Mosaic's conduct subjected Plaintiff to cruel and unjust hardship in conscious disregard of his rights. Mosaic's deceit and concealment of material facts known to Mosaic was carried out with the intention of depriving Plaintiff of his legal rights or otherwise causing Plaintiff injury. Accordingly, Plaintiff is entitled to punitive damages pursuant to Civ. Code §3294.

## SECOND CLAIM FOR RELIEF
### (Negligence)

70.     Plaintiff realleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

71.     In addition to its own violations of law, Mosaic is subject to all claims and defenses that Plaintiff has against Freedom Forever because Mosaic is the holder of the consumer credit contract on which Plaintiff is alleged to be obligated.

72.     Plaintiff alleges, that at all times relevant herein, Defendants acted negligently, carelessly, recklessly and/or unlawfully in representing facts to Plaintiff, failing to disclose complete and accurate information to Plaintiff, and in designing and implementing a program which enables and facilitates unauthorized loans. Specifically, Defendants acted negligently, carelessly, recklessly and/or unlawfully by:

    a)  Concealing the fact that Mosaic and its agents were selling a solar installation contract and loan agreement;

    b)  Concealing the fact that Mosaic and its agents accessed and intended to use the PII of Plaintiff to submit a loan application for Plaintiff;

    c)  Concealing the fact that Mosaic and its agents were placing Plaintiff in a solar installation contract; and

    d)  Concealing the fact that Mosaic and its agents were placing Plaintiff in a loan agreement.

73.     The alleged transaction between Mosaic and Plaintiff was intended to affect Plaintiff, as the transaction was ostensibly intended to provide Plaintiff with solar panels and other home improvements and the financing for those improvements. The harm suffered by Plaintiff in becoming obligated on a solar installation contract and a 25-year loan agreement to which he did not agree was a foreseeable consequence of Mosaic's actions. Plaintiff suffered injury as a result of Mosaic's conduct, including the emotional distress and anxiety caused by receiving numerous demands for payment on a debt he did not owe over the course of more than a year. He has also suffered harm as a result of Mosaic reporting his alleged loan account as delinquent to Transunion and Experian. Mosaic's conduct is directly connected to the injury Plaintiff suffered, since absent Mosaic's concealment of material facts Plaintiff would not have suffered emotional distress and anxiety and would not have a negative report on his credit record. The moral blame attached to Mosaic's conduct is high, given Mosaic's deliberate forgery of Plaintiff's electronic signature on a 25-year loan agreement for nearly $50,000 and Mosaic's willful refusal to investigate Plaintiff's multiple reports of fraud. The policy of preventing future harm supports finding that Mosaic owed a duty of care to Plaintiff to take reasonable measures to prevent fraud and deception in Mosaic's sales practices, as other consumers are at risk of similar injury if Mosaic's conduct is not halted.

74.     For Mosaic's negligence, Plaintiff is entitled to actual and punitive damages. Civ. Code §§3333, 3294.

### THIRD CLAIM FOR RELIEF
**(Violation of the Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq.*)**

75.     Plaintiff realleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

76.     In addition to its own violations of law, Mosaic is subject to all claims and defenses that Plaintiff has against Freedom Forever because Mosaic is the holder of the consumer credit contract on which Plaintiff is alleged to be obligated.

77.     Congress enacted the FCRA to "ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Dutta v. State Farm Mut. Auto.*

1    *Ins. Co.* (9th Cir. 2018) 895 F.3d 1166, 1169 (quoting *Safeco Ins. Co. of Am. v. Burr* (2007) 551

2    U.S. 47, 52).

3    78.    The FCRA prohibits persons from obtaining consumer reports for any reason other than a

4    permissible purpose. 15 U.S.C. §1681b(f) ("A person shall not use or obtain a consumer report

5    for any purpose unless . . . the consumer report is obtained for a purpose for which the consumer

6    report is authorized to be furnished under this section."). Additionally, the entity using the credit

7    report must certify truthfully that it is obtaining the consumer report for a permissible purpose.

8    15 U.S.C. §1681b(f)(2). It is a violation of the FCRA to obtain a consumer credit report under

9    false pretenses. 15 U.S.C. §1681q.

10   79.    Mosaic violates the FCRA by obtaining consumer reports for reasons other than the

11   statutorily permissible purposes. 15 U.S.C. §1681b(f). Specifically, Mosaic obtains and uses

12   consumer reports when Mosaic seeks and obtains the consumer reports underlying Mosaic's

13   extension of financing for the purchase of solar panels but when the borrowers do not consent to

14   be borrowers on Mosaic's loan agreements. Further, Mosaic acted under false pretenses in using

15   Plaintiff's credit information to obligate him on a 25-year Loan Agreement totaling almost

16   $50,000 without Plaintiff's knowledge or consent. 15 U.S.C. §1681q. Utilizing Plaintiff's

17   consumer credit report to sign up Plaintiff for an for expensive, multi-decade loan without

18   Plaintiff's knowledge or consent is not a permissible purpose under the FCRA.

19   80.    For Mosaic's violations of the FCRA, Plaintiff is entitled to actual damages and

20   reasonable attorneys' fees and costs. 15 U.S.C. §1681o. Further, because Mosaic's violations of

21   the FCRA were willful, Plaintiff is also entitled to statutory damages up to $1,000 and such

22   amount of punitive damages as the Court may allow. 15 U.S.C. §1681n.

23
**FOURTH CLAIM FOR RELIEF**
**(Violations of the Consumer Legal Remedies Act, Civ. Code §1750, *et seq.*)**

24

25   81.    Plaintiff realleges and incorporates by reference as though fully set forth herein each and

26   every allegation contained in the preceding paragraphs.

27   82.    In addition to its own violations of law, Mosaic is subject to all claims and defenses that

28   Plaintiff has against Freedom Forever because Mosaic is the holder of the consumer credit

1    contract on which Plaintiff is alleged to be obligated.

2    83.    The CLRA was designed and enacted to protect consumers from unfair and deceptive

3    business practices. To this end, the CLRA sets forth a list of unfair and deceptive acts and

4    practices in Civil Code §1770 that are prohibited in any transaction intended to result in the sale

5    or lease of goods or services to a consumer.

6    84.    At all relevant times, Plaintiff was a "consumer" within the meaning of the CLRA, Civil

7    Code §1761(d). Mosaic and its agents are companies and, as such, are "persons" as that term is

8    defined in Civil Code §1761(c). The transaction from which this action arises was intended to

9    result in the sale or lease of goods or services to a consumer and is covered by the CLRA.

10    85.    The acts and practices of Mosaic and its agents violated the CLRA and constitute the

11    following unfair methods of competition and unfair or deceptive practices:

     a)    Representing and advertising goods or services with the intent to not sell it as advertised in violation of Civil Code §1770(a)(9);

     b)    Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions, in violation of Civil Code §1770(a)(13);

     c)    Representing that a transaction confers or involves rights and remedies which it does not have or involve, or are prohibited by law in violation of Civil Code §1770(a)(14);

     d)    Representing that the subject of a transaction has been supplied in accordance with a previous transaction when it has not, in violation of Civil Code §1770(a)(16); and

     e)    Misrepresenting the authority of a salesperson, representative, or agent to negotiate the final terms of a transaction with a consumer, in violation of Civil Code §1770(a)(18).

86.    Mosaic and its agents' violations of the CLRA present a continuing threat to Plaintiff and the public in that Mosaic and its agents continue to engage in the above-referenced acts and practices.

87.    The acts and practices of Mosaic and its agents are willful, inattentional, and approved by

1    managing agents as detailed above. The acts and practice have harmed Plaintiff.

2    88.    Additionally, Mosaic's violations of Civil Code §1770 present a continuing threat to

3    members of the public in that Mosaic continues to engage in the alleged practices and has not

4    ceased.

5    89.    For Mosaic's violations of the CLRA, Plaintiff seeks an injunction pursuant to Civil Code

6    §1780(a). Not less than 30 days after the commencement of this action for injunctive relief,

7    Plaintiff will amend his Complaint to include a request for damages, including actual damages,

8    restitution, and punitive damages. *See* Civ. Code §§1780(a), 1782(d)

9    90.    Plaintiff is also entitled to an award of attorneys' fees and costs pursuant to Civil Code

10   §1780(e).

11   **FIFTH CLAIM FOR RELIEF**
     **(Violations of the Rosenthal Fair Debt Collection Practices Act, Civ. Code §1788 *et seq.*)**
12

13   91.    Plaintiff realleges and incorporates herein by reference as though fully set forth herein

14   each and every allegation contained in the preceding paragraphs.

15   92.    In addition to its own violations of law, Mosaic is liable for the actions and conduct of its

16   agent, Concord, whom Mosaic vested with actual authority to collect debts on Mosaic's behalf

17   and whose conduct Mosaic ratified by accepting the benefits of Concord's actions.

18   93.    The Rosenthal Act was enacted in 1976 to ensure the integrity of our banking and credit

19   industry. Civ. Code §1788.1(b). The Legislature found that "unfair or deceptive debt collection

20   practices undermine the public confidence which is essential to the continued functioning of the

21   banking and credit system and sound extensions of credit to consumers." Civ. Code

22   §1788.1(a)(1).

23   94.    At all times relevant herein Mosaic was and is a "debt collector" within the meaning of

24   Civ. Code §1788.2(c). Mosaic regularly and in the ordinary course of business, on behalf of itself

25   or others, engages in acts and practices in connection with the collection of consumer debt.

26   95.    The alleged transaction between Mosaic and Plaintiff is a "consumer credit transaction"

27   within the meaning of Civ. Code §1788.2(e) because it was allegedly a transaction between a

28   Plaintiff (a natural person) and Mosaic in which property, services, or money was allegedly

1    acquired on credit by Plaintiff from Mosaic primarily for personal, family, or household

2    purposes.

3    96.     The debt which Mosaic is attempting to collect from Plaintiff is a "consumer debt" within

4    the meaning of Civ. Code §1788.2(f) because it is money alleged to be due or owing from a

5    natural person by reason of a consumer credit transaction.

6    97.     Plaintiff is a "debtor" within the meaning of Civ. Code §1788.2(h) in that he is natural

7    person from whom Mosaic sought to collect a consumer debt alleged to be due and owing.

8    98.     Mosaic has a non-delegable duty under the Rosenthal Act not to commit violations of the

9    Act, and not to allow its agents to commit such violations.

10   99.     Since mid-2022, Mosaic has attempted to collect a non-existent debt from Plaintiff by

11   making demands for payment and attempting to collect amounts that are not owed as a matter of

12   law because Plaintiff never entered into a loan agreement with Mosaic. Plaintiff does not owe

13   any amount to Mosaic. Further, Mosaic violated the Rosenthal Act by reporting Plaintiff's

14   alleged loan account as delinquent to Transunion and Experian, even though Plaintiff never

15   borrowed any amount from Mosaic. Mosaic's continued attempts to collect a non-existent debt

16   from Plaintiff violate Civ. Code §1788.17 (through violation of 15 U.S.C. §1692b, including

17   §1692b(6) and 15 U.S.C. §1692(c), including §1692c(a)(2)).

18   100.    Mosaic made false representations that Plaintiff owed monthly payments to Mosaic even

19   though Plaintiff never had any obligation to Mosaic. This was a violation of Civ. Code §1788.17

20   (through violation of 15 U.S.C. §1692e, including §1692e(2)).

21   101.    Mosaic, through its agent Concord, violated the Rosenthal Act through causing Plaintiff's

22   phone to ring repeatedly or otherwise annoying Plaintiff and by communicating with Plaintiff

23   with such frequency as to be unreasonable, which constitutes harassment. Civ. Code

24   §1788.11(d), (e); 15 U.S.C. §1692d(5). Mosaic and its agent Concord engaged in a concerted

25   debt collection campaign, contacting Plaintiff repeatedly through phone, email, mail, and letters

26   taped to his door. Mosaic's conduct constitutes harassment within the meaning of the Rosenthal

27   Act, including by incorporation of 15 U.S.C. §1692d. Civ. Code §1788.17.

28   102.    It is a violation of the Rosenthal Act for a debt collector to send any written or digital

1   communication to an alleged debtor that does not display the California license number of the

2   debt collector in at least 12-point type. Civ. Code §1788.11(f). No debt collection

3   communications from Mosaic or its agent Concord contained a California debt collector license

4   number.

5   103.    As a proximate result of Mosaic's violations of the Rosenthal Act, Plaintiff suffered

6   damages in amounts to be proven at trial.

7   104.    Plaintiff is entitled to recover his actual damages pursuant to Civ. Code §1788.17,

8   incorporating by reference 15 U.S.C. §1692k(a)(1), or in the alternative, Civ. Code §1788.30(a),

9   including, but not limited to, damages for his emotional distress.

10   105.    Plaintiff is also entitled to recover statutory damages of $1,000 pursuant to Civ. Code

11   §1788.17, which incorporates by reference the remedies of 15 U.S.C. §1692k(a)(2)(A), or in the

12   alternative, Civ. Code §1788.30(b).

13   106.    Plaintiff is entitled to reasonable attorneys' fees and costs pursuant to Civ. Code

14   §1788.17, incorporating by reference 15 U.S.C. §1692k(a)(3), or in the alternative, Civ. Code

15   §1788.30(c).

16
                    **SIXTH CLAIM FOR RELIEF**
                    **(Violations of the Home Solicitation Sales Act, Civ. Code §1689.5, *et seq.*)**
17

18   107.    Plaintiff realleges and incorporates by reference as though fully set forth herein each and

19   every allegation contained in the preceding paragraphs.

20   108.    In addition to its own violations of law, Mosaic is subject to all claims and defenses that

21   Plaintiff has against Freedom Forever because Mosaic is the holder of the consumer credit

22   contract on which Plaintiff is alleged to be obligated.

23   109.    The Home Solicitation Sales Act, Civ. Code §1689.5 *et seq.* was enacted in 1971 to

24   protect California consumers against the type of pressures that arise when a salesperson appears

25   at a consumer's home. Regardless of whether the buyer invites the seller to his/her home, serious

26   pressure arises from the mere fact that the seller may be an intimidating presence once inside the

27   buyer's home. A reluctant buyer can easily walk away from a seller's place of business, but

28   he/she cannot walk away from his/her own home and may find that the only practical way of

1   getting the seller to leave is to agree to buy what the seller is selling.

2   110.   As a result, the HSSA broadly defines "home solicitation" to mean "any contract,

3   whether single or multiple, or any offer which is subject to approval, for the sale, lease, or rental

4   of goods or services or both, made at other than appropriate trade premises in an amount of

5   twenty-five dollars ($25) or more, including any interest or service charges." Civ. Code

6   §1689.5(a). The definition focuses not on who initiated the contact between the buyer and the

7   seller, but on where the contract was made.

8   111.   Because of the pressures of home solicitation sales, the HSSA gives the non-senior

9   citizen consumer the right to cancel a home solicitation contract until midnight of the third

10   business day after the buyer receives a signed and dated copy of the contract or offer to purchase

11   that complies with Section 1689.7. Civ. Code §1689.6(a)(2).

12   112.   If the consumer is a "senior citizen" (defined as an individual who is 65 years of age or

13   older, Civ. Code §1689.5(f)), the HSSA gives the consumer the right to cancel a home

14   solicitation contract until midnight of the fifth business day after the buyer receives a signed and

15   dated copy of the contract or offer to purchase that complies with Section 1689.7. Civ. Code

16   §1689.6(a)(3)(A).

17   113.   The precise contents of the notice of cancellation are set forth in the HSSA and cannot be

18   modified. Civ. Code §1689.7(a)(1).

19   114.   The HSSA further provides that the home solicitation sales contract shall be signed by the

20   buyer. Civ. Code §1689.7(a)(1).

21   115.   The HSSA further provides that the seller shall provide the buyer with a copy of the

22   contract and the attached notice of cancellation, and shall inform the buyer orally of the buyer's

23   right to cancel and the requirement that cancellation be in writing, at the time the home

24   solicitation contract or offer is executed. Civ. Code §1689.7(f).

25   116.   If a seller fails to strictly comply with the provisions of the HSSA, the buyer retains the

26   right to cancel the contract until the seller complies with the HSSA. Civ. Code §1689.7(c). The

27   seller is not entitled to any compensation. Civ. Code §§1689.11.

28   117.   Mosaic has violated Civ. Code §1689.5, *et seq.* by failing to provide Plaintiff with fully

1   executed contracts signed by Plaintiff and Mosaic, by failing to provide Plaintiff with any notice

2   of his three-day right to cancel, and by failing to inform Plaintiff orally of his right to cancel.

3   118.    An actual controversy exists between Plaintiff and Mosaic concerning their rights and

4   duties under the HSSA. This controversy is ripe for adjudication. Plaintiff is entitled to a

5   declaratory judgment adjudicating the rights and duties of the parties under the HSSA.

6   119.    Plaintiff is entitled to actual or nominal damages pursuant to Civ. Code §3360 for

7   Mosaic's violations of the HSSA. Plaintiff is further entitled to rescind the alleged loan

8   agreement pursuant to Civ. Code §1689.7(g).

9                          **SEVENTH CLAIM FOR RELIEF**
                   **(Violation of Business and Professions Code §7150, *et seq.*)**
10

11  120.    Plaintiff realleges and incorporates by reference as though fully set forth herein each and

12  every allegation contained in the preceding paragraphs.

13  121.    In addition to its own violations of law, Mosaic is subject to all claims and defenses that

14  Plaintiff has against Freedom Forever because Mosaic is the holder of the consumer credit

15  contract on which Plaintiff is alleged to be obligated.

16  122.    Business and Professions Code §7159(b) defines "home improvement contract" as "an

17  agreement, whether oral or written, or contained in one or more documents, between a contractor

18  and an owner or between a contractor and a tenant, regardless of the number of residence or

19  dwelling units contained in the building in which the tenant resides, if the work is to be

20  performed in, to, or upon the residence or dwelling unit of the tenant, for the performance of a

21  home improvement, as defined in Section 7151, and includes all labor, services, and materials to

22  be furnished and performed thereunder, if the aggregate contract price specified in one or more

23  improvement contracts, including all labor, services, and materials to be furnished by the

24  contractor, exceeds five hundred dollars ($500). "Home improvement contract" also means an

25  agreement, whether oral or written, or contained in one or more documents, between a

26  salesperson, whether or not they are a home improvement salesperson, and an owner or a tenant,

27  regardless of the number of residence or dwelling units contained in the building in which the

28  tenant resides, which provides for the sale, installation, or furnishing of home improvement

goods or services."

123.     Business and Professions Code §7159(d) requires that "A home improvement contract and any changes to the contract shall be in writing and signed by the parties to the contract prior to the commencement of work covered by the contract or an applicable change order and, except as provided in paragraph (8) of subdivision (a) of Section 7159.5, shall include or comply with all of the following: (1) The name, business address, and license number of the contractor. (2) If applicable, the name and registration number of the home improvement salesperson that solicited or negotiated the contract."

124.     At all times relevant herein, Mosaic and its agents were engaged in "home improvement" under Business and Professions Code §7151 and in the sale of "home improvement goods or services" with "goods" and "services" being defined by Civil Code §1689.5.

125.     Mosaic alleges the existence of one or more "home improvement contracts" between Mosaic and Plaintiff within the meaning of Business and Professions Code §7151.2.

126.     Unknown to Plaintiff, the alleged, forged Mosaic contract contained multiple violations of Bus. & Prof. Code §7159:

    a)    Subdivision (c)(3)(A): The contractor did not give the buyer a copy of the contract signed and dated by both the buyer and the contract. The buyer did not receive a copy of the contract that initiates the buyer's rights to cancel the contract pursuant to Civ. Code §§1689.5 to 1689.14, inclusive.

    b)    Subdivision (d): The contract was not signed by the parties to the contract prior to the commencement of the work covered by the contract or any applicable change order. *Plaintiff did not sign the contract.*

127.     Pursuant to Business and Professions Code §7161 the following proscribed acts are considered misdemeanors:

    (a)    Using false, misleading, or deceptive advertising as an inducement to enter into any contract for a work of improvement, including, but not limited to, any home improvement contract, whereby any member of the public may be misled or injured;

(b)     Making any substantial misrepresentation in the procurement of a contract for a home improvement or other work of improvement or making any false promise of a character likely to influence, persuade, or induce any person to enter into the contract; and

(c)     Any fraud in the execution of, or in the material alteration of, any contract, trust deed, mortgage, promissory note, or other document incident to a home improvement transaction or other transaction involving a work of improvement.

128.    Liability for violations of these provisions by a home improvement salesperson extends to the contractor employing him or her. Bus. & Prof. Code §7155.5. Freedom Forever and its sales representatives acted as the agents of Mosaic for the purposes of the Mosaic Program.

129.    At all times relevant herein, Mosaic and its agents were under a duty to follow the law, including Business and Professions Code §§7153, 7159, and 7161. The aforementioned statutes were intended to protect against the type of harm suffered by Plaintiff, a California homeowner targeted by an unscrupulous home improvement salesperson for the sale of home improvement goods and services.

130.    Mosaic's agents breached their duty when Mosaic's sales agents concealed material facts from Plaintiff, including:

a)     Concealing the fact that Mosaic and its agents were selling a solar installation contract and loan agreement;

b)     Concealing the fact that Mosaic and its agents intended to use Plaintiff's PII to submit a loan application for Plaintiff;

c)     Concealing the fact that Mosaic and its agents were placing Plaintiff in a solar installation contract; and

d)     Concealing the fact that Mosaic and its agents were placing Plaintiff in a loan agreement.

131.    Mosaic and its agents furthermore breached their duty by submitting a loan application for Plaintiff, placing Plaintiff in a solar installation contract and placing Plaintiff in a loan agreement, all without his knowledge or permission.

132.    As a direct and legal result of the wrongful acts and/or omissions of Mosaic, Plaintiff suffered harm.

133.    For Mosaic's violations of Bus. & Prof. Code §7150 *et seq.*, Plaintiff is entitled to recover actual damages, civil penalties in the amount of $500, and reasonable attorneys' fees and costs. Bus. & Prof. Code §7160.

**EIGHTH CLAIM FOR RELIEF**
**(Violations of Business and Professions Code §17200, *et seq.*)**

134.    Plaintiff realleges and incorporates by reference as though fully set forth herein each and every allegation contained in the paragraphs above.

135.    In addition to its own violations of law, Mosaic is subject to all claims and defenses that Plaintiff has against Freedom Forever because Mosaic is the holder of the consumer credit contract on which Plaintiff is alleged to be obligated.

136.    The UCL defines unfair competition to include any unlawful, unfair, or fraudulent business act or practice, and prohibits such conduct. Bus. & Prof. Code §17200. Beginning on an exact date unknown to Plaintiff, but at all times relevant herein, Defendants committed and are continuing to commit acts of unfair competition proscribed by the UCL, including the practices alleged herein.

137.    Plaintiff has standing to bring this claim because he has lost money or property as a result of the acts and practices alleged herein, including by virtue of Mosaic making a negative credit report and impacting Plaintiff's credit.

138.    The business acts of Mosaic, as hereinabove alleged, constitute unlawful business practices in that the acts and practices violate the FCRA, 15 U.S.C. §1681, *et seq.*; the CLRA, Civ. Code §1750, *et seq.*; the Rosenthal Act, Civ. Code §1788, *et seq.*; the HSSA, Civ. Code §1689.5, *et seq*; and Bus. & Prof. Code §7150, *et seq*.

139.    The business acts of Mosaic, as hereinabove alleged also constitute unlawful practices under federal law in at least the following respects:

    a)    Mosaic has engaged in unfair acts and practices with regard to originating loans and servicing loans to customers who did not authorize them in violation of 12

27
Complaint

U.S.C. §§5531(a) and 5536(a)(1)(B); and

    b)    Mosaic has engaged in unfair acts and practices by structuring its loan origination and servicing activities in a manner that enables, facilitates, and allows unauthorized loans in violation of 12 U.S.C. §§5531(a) and 5536(a)(1)(B).

140.    The business acts and practices of Mosaic, as hereinabove alleged, constitute unfair business practices in that the acts and practices offend public policy and are substantially injurious to consumers. The acts and practices have no utility that outweighs the substantial harm to consumers.

141.    The business acts and practices of Mosaic as hereinabove alleged, constitute fraudulent business practices in that the acts and practices are likely to deceive the public and affected consumers as to their legal rights and obligations and avoid mandated disclosures; and by use of such deception, induce consumers to enter transactions which they otherwise would decline. The practices alleged are fraudulent and unfair, constituting deceptive practices which were predatory under the circumstances set forth herein.

142.    The unlawful, unfair, and fraudulent business acts and practices described herein present a continuing threat in that Mosaic and its agents are currently engaging in such acts and practices and will persist and continue to do so unless and until an injunction is issued by the Court.

143.    For Mosaic's violations of the UCL, Plaintiff is entitled to a public injunction enjoining the unlawful, unfair, and fraudulent conduct engaged in by Mosaic and its agents.

144.    Plaintiff is entitled to restitution of any amounts taken by Mosaic and its agents.

145.    Plaintiff is entitled to an award of attorneys' fees and costs in prosecuting this action under Code of Civil Procedure §1021.5 because:

    a)    A successful outcome in this action will result in the enforcement of important rights affecting the public interest by protecting the general public from unfair, unlawful, and deceptive practices;

    b)    This action will result in a significant public benefit by compelling Mosaic to comply with the law;

    c)    Unless this action is prosecuted, Mosaic's activities will go unremedied and will

1  continue unabated.

2      d)      Plaintiff is an individual of modest means with limited access to the courts and the

3              civil justice system. Unless attorneys' fees, costs and expenses are awarded

4              against Mosaic, Plaintiff will not recover the full measure of his loss.

5                              **PRAYER FOR RELIEF**

6      WHEREFORE, PLAINTIFF prays for relief as follows:

7  (1)     An award of actual damages,[10] including but not limited to, emotional distress damages;

8  (2)     An award of general damages;

9  (3)     An award of punitive damages;

10  (4)     An award of civil penalties;

11  (5)     An award of statutory damages;

12  (6)     An award of nominal damages;

13  (7)     An award of restitution;

14  (8)     An order finding and declaring that any alleged contracts between Plaintiff and Mosaic

15  have been cancelled and are void;

16  (9)     An order finding and declaring that Mosaic's acts and practices challenged herein are

17  unlawful, unfair, and fraudulent;

18  (10)    A comprehensive public injunction barring Mosaic from engaging in the unlawful, unfair,

19  and fraudulent business practices challenged herein and compelling Mosaic to conform its

20  conduct to the requirements of the law;

21  (11)    Prejudgment interest at the maximum legal rate;

22  (12)    An award of attorneys' fees, costs, and expenses incurred in the investigation, filing, and

23  prosecution of this action; and

24  //

25  //

26  //

27  //

28

---

[10] Except that Plaintiff does not pray for damages pursuant to Civ. Code §1780 at this time. Plaintiff will amend the Complaint to pray for said damages at a later date.

(13)    Any other and further relief as this Court shall deem just and proper.

Dated: February 7, 2024                      KEMNITZER, BARRON & KRIEG, LLP

                                 By:    _____
                                        MALACHI J. HASWELL
                                        KRISTIN KEMNITZER
                                        ADAM J. MCNEILE
                                        Attorneys for Plaintiff Ross Hightower

1

**JURY TRIAL DEMANDED**

2

Plaintiff demands a trial by jury on all issues so triable.

3

Dated: February 7, 2024                    KEMNITZER, BARRON & KRIEG, LLP

4

5

By: _____

6

MALACHI J. HASWELL
KRISTIN KEMNITZER

7

ADAM J. MCNEILE
Attorneys for Plaintiff Ross Hightower

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28